Curtis G. MATTHEWS t/a Matthews Apothecary and Hartford Accident and Indemnity Co., Petitioners,

v.

Noah C. A. WALTER, Deputy Commissioner of U. S. Department of Labor and Frances Valentine, Respondents.

No. 73–2152.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1975.

Decided March 10, 1975.

942

John C. Duncan, III, Washington, D. C., for petitioners.

Maryanne Kane, Washington, D. C., of the bar of the District of Columbia Court of Appeals, pro hac vice by special leave of court for respondent Walter. George M. Lilly, Atty., U. S. Dept. of Labor was on the brief for respondent Walter.

Charles A. Brady, Washington, D. C., for respondent Valentine.

Before LEVENTHAL and ROBINSON, Circuit Judges, and MARKEY,* Chief Judge, U. S. Court of Customs and Patent Appeals.

PER CURIAM:

This appeal challenges an award of death benefits under the workmen's compensation statute of the District of Columbia, 36 D.C.Code § 501 et seq. (1973), which makes applicable the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1970), as amended (Supp. II 1972). On February 1, 1972, Frances M. Valentine filed a claim for death benefits as the widow of Eli Huey Valentine who was killed in the District of Columbia on January 6, 1970, while performing work duties for Curtis G. Matthews t/a

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

Matthews Apothecary. After an evidentiary hearing, Noah C. A. Walter, Deputy Commissioner of the Office of Workmen's Compensation Programs of the Department of Labor, entered a compensation order on November 28, 1972. The order awarded benefits to the claimant as a "surviving widow" within the terms of the Longshoremen's and Harbor Workers' Compensation Act. Subsequently, the employer and carrier petitioned the Benefits Review Board to set aside the award. Following oral argument, the Board on September 14, 1973, affirmed the Deputy Commissioner and assessed attorney's fees of $500 against the employer and carrier for services rendered by claimant's counsel before the Board. The award of attorney's fees was made under a 1972 amendment to the Act which became effective on November 26, 1972, prior to the hearing before the Board. 33 U.S.C. § 928 (Supp. II 1972).

The employer, Curtis G. Matthews t/a Matthews Apothecary, and the carrier, Hartford Accident and Indemnity Co., bring this appeal challenging both the determination that the claimant qualified as a surviving widow under the Act and the award of attorney's fees by the Board. We affirm the award of death benefits to claimant as the surviving widow of Eli Huey Valentine. We find that the Board failed to follow its regulations requiring a "complete statement of the extent and character of the necessary work done" as a predicate for the grant of fees[1] and remand the fee award to enable the Board to consider the matter after receipt of the required statement.

## I. THE SURVIVING WIDOW REQUIREMENT

The Act provides that compensation "known as a death benefit" shall be payable to "A surviving wife or dependent husband . . . [or] surviving child." 33 U.S.C. § 909 (1970), as amended (Supp. II 1972).[2] "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time." 33 U.S.C. § 902(16) (1970), as amended (Supp. II 1972). In interpreting this section the Supreme Court found that "the essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death." Thompson v. Lawson, 347 U.S. 334, 336–37, 74 S.Ct. 555, 557, 98 L.Ed. 733 (1954). Here claimant contended that she was living apart from the decedent for justifiable cause at the time of his death. Petitioner challenges this contention and further urges that claimant does not meet the test set forth in Thompson because she had embarked upon a permanent relationship with another man. We shall examine each of these claims in turn.

### A. *Justifiable Cause*

Claimant, the only witness before the Deputy Commissioner, stated that she and the decedent agreed to separate in 1954 because his excessive drinking was a bad influence on their two minor children. (JA 20–24, 30).[3] The Valentines maintained separate abodes from the time of the separation until Mr. Valentine's death in 1970. The Deputy Com-

---

**1.** *See* 20 C.F.R. §§ 702.132, 802.203(a) (1974). These sections are set forth at note 14 *infra*.

**2.** The Act provides that compensation for death shall be a percentage of the average wages of the deceased. The percentage varies according to the survivors of the deceased employee. In the present case, claimant was awarded 35% of decedent's $40 average weekly wage because there were no surviving "children" within the meaning of the Act. (JA 79). The 1972 amendments increase the amount available for funeral expenses and the percentage of the deceased employee's wages to be awarded a "widow" or "widower." *See* 33 U.S.C. § 909 (Supp. II 1972).

**3.** Inexplicably, the Deputy Commissioner found that the Valentines separated in 1952. (JA 78). In 1954, the couple's children were fourteen and seven years old. *See* JA 20–21; text at note 10 *infra*.

missioner concluded that "the credible evidence sustains that at the time of the employee's injury and death the claimant widow was living apart from the employee for justifiable cause." (JA 79).

■ Petitioners contend that the decedent's drinking and its adverse potential impact on his minor children do not constitute the sort of conduct which may serve as justifiable cause for the claimant's living apart from her husband. This contention rests solely on our decision in Weeks v. Behrend, 77 U.S.App.D.C. 341, 135 F.2d 258 (1943). That decision affirmed a district court holding that the Deputy Commissioner's finding of "living apart for justifiable cause" was "not supported by substantial evidence" where the couple separated by mutual consent in order to enable the husband to obtain employment from the Public Relief Bureau. Id. at 342, 135 F.2d at 259. This court opined that Congress had looked to the law of divorce and separation in fashioning the "justifiable cause" requirement and intended the phrase as "substantially equivalent to a 'matrimonial offense.'" Id. Subsequent to Weeks the Fifth Circuit gave justifiable cause a broader and more straightforward interpretation, finding a mother-in-law's violent objection to the claimant and her cutting up of claimant's clothes sufficient as a justifiable cause for living apart.[4] We read Thompson as undermining the narrow construction of "justifiable cause" offered in Weeks. The Court stated in Thompson that it would not assess "the marital conduct of the parties. That is an inquiry which may be relevant to legal issues arising under State domestic relations law. Our concern is with the proper interpretation of the Federal Longshoremen's Act." 347 U.S. at 336, 74

S.Ct. at 556. We conclude that the Deputy Commissioner and the Board properly found that the decedent's drinking and its effect on claimant's minor children constituted justifiable cause for their separation.

■ In their brief, petitioners claimed that even if a justifiable cause existed at the time of the separation it did not persist until the date of the employee's death,[5] the time fixed by the statute for ascertaining the existence of justifiable cause.[6] The justifiable cause requirement is met where, as here, it continued over a period (at least 11 years) sufficient to shape the claimant's way of life. Counsel for petitioners conceded as much, at least where there was no subsequent "misconduct" undercutting conjugal nexus. This comports with human realities and avoids working undue hardships upon individuals by forcing either the forfeiture of benefits or the abandonment of a life style to which they had become accustomed following the justified separation. In essence, we believe that at least in cases like the present one the effect of the original justification persists and inheres in the relationship of the parties despite the change in circumstances since the initial separation.[7]

### B. Conjugal Nexus

■ Thompson teaches that recovery of benefits as a surviving widow is dependent on the existence of a "conjugal nexus" between the claimant and the decedent at the time of the employee's death. As this court found in Liberty Mutual Insurance Co. v. Donovan, 95 U.S.App.D.C. 49, 51, 218 F.2d 860, 862 (1955), the conjugal nexus test focuses on the "real status" of the claimant "in

---

4. See Henderson v. Avondale Marine Ways, Inc., 204 F.2d 178 (5th Cir.), cert. denied, 346 U.S. 875, 74 S.Ct. 128, 98 L.Ed. 77 (1953).

5. See Brief for Petitioners at 7–8.

6. See 33 U.S.C. § 902(16) (1970), as amended, (Supp. II 1972).

7. Although the Valentines' two children were 29 and 22 years old at the time of decedent's

death, Leslie (claimant's daughter by Cleveland Mosely) was only 12 years old. Thus, if decedent's drinking problem continued, it is possible that the reason for the initial separation still had vitality in 1970. The absence of evidence or findings regarding decedent's drinking habits during the years prior to his death precludes us from resting our decision on a continued risk to claimant's minor child.

respect to the deceased, not the existing legal formalities of the relationship." Pointing to language in *Thompson,* petitioners contend that the claimant is barred from obtaining death benefits because she embarked on a permanent relationship with another man, a Mr. Mosely, prior to decedent's death.[8] Certainly, the existence of a continuing—or "permanent"—relationship with another man, is a factor to be weighed in ascertaining the real status of the claimant and the decedent, and it may well be that in other cases, and perhaps even in most cases, that it would negative the requisite conjugal nexus. However, we do not read *Thompson* as establishing the absence of a permanent relationship as a separate and indispensable requirement.[9]

The relevant facts relating to the real status of the Valentines at the time of Mr. Valentine's death in 1970 can be briefly summarized. The couple married in 1939, had two children (Donna in 1940 and Gary in 1947), and separated in 1954.[10] About 1957, Mrs. Valentine began having sexual relations with Cleveland Mosely that resulted in the birth of a child, Leslie, in 1958. Claimant continued to have relations with Mosely up to and after the death of Mr. Valentine. Following the 1954 separation, claimant never lived in the same abode with Mosely or any other man. Decedent visited the claimant during the entire 16 year span of their separation, continued to have sexual intercourse with her, and occasionally spent two or three nights a week with her. He contributed to his wife's support for a period of about three years after the separation and gave money for support of the children (including Leslie) thereafter. He knew Mosely was Leslie's father and accepted her and his wife's relationship with Mosely. Claimant visited the decedent at the time of his illness in 1969 and helped care for him at that time. She consistently held herself out as Mrs. Valentine and was known to her friends and the community as Mrs. Valentine. Claimant never divorced the decedent or attempted to marry Mr. Mosely.

 We believe these facts provide substantial evidence to support the Board's finding of a conjugal nexus between the Valentines at the time of decedent's death. In *Thompson* the Court found that claimant's "embarking upon another permanent relationship" was a "conscious choice to terminate her prior conjugal relationship" with the decedent and to sever "the bond which was the basis of her right to claim a death benefit."[11] Here, by contrast, the continuing relationship with Mosely as a boy friend did not displace claimant's relationship with the decedent so as to destroy their continued real status as husband and wife. Claimant's continued sexual relations with decedent, her consistent holding out as decedent's wife, her solicitude to decedent during his

---

**8.** Petitioners urge that the evidence of claimant's continuing relationship with Mosely over an approximately fifteen year period (from 1957 until the 1972 hearing) establishes that she had embarked on a permanent relationship with another man. The Deputy Commissioner made no findings with regard to the permanency of claimant's association with Mosely. Since we reject petitioners' contention that a permanent relationship with another man would constitute an absolute bar to compensation, we have no occasion to delineate indicia of permanency or characterize the claimant's relationship with Mosely.

**9.** We believe that petitioners' attempt to raise claimant's relationhip with Mosely as a separate and absolute bar to receipt of benefits, even where there is a finding of conjugal nexus, is contrary to *Thompson* because it would impose a penalty based on an assessment of "the marital conduct of the parties." 347 U.S. at 336, 74 S.Ct. at 556.

**10.** *See* JA 20–21, 30, 75.

**11.** *See* 347 U.S. at 337, 74 S.Ct. at 557. The facts of *Thompson* illustrate the circumstances in which another permanent relationship represents a conscious choice to terminate a prior conjugal relationship. The claimant, Julia Thompson, was deserted by the decedent in 1925. In 1940 she "married" Jimmy Fuller and was known thereafter as Julia Fuller. In 1949 she formally divorced Fuller. Shortly before Thompson's death in 1951, claimant refused his request to "take him back" and never resumed a husband-wife relationship with him prior to his death. *See id.* at 335, 74 S.Ct. at 556.

1969 illness, his contribution of funds from his meager income,[12] his knowing acceptance of claimant's relationship with Mosely, the absence of an attempt by either party to remarry, and the fact that claimant never lived in the same abode with Mosely, all constitute a complex of circumstances that are substantial evidence to support a finding of a conjugal nexus at the time of Mr. Valentine's death.

## II. THE AWARD OF ATTORNEY'S FEES

■ Petitioners contend that the Review Board acted unconstitutionally in awarding attorney's fees to claimant's counsel for services rendered *after* the effective date of the authorizing amendment in a case concerning a death occurring *prior* to that date. The Second Circuit recently considered this particular question and concluded that Congress intended that the amendment apply in pending proceedings to services performed after its effective date and that such application was devoid of constitutional infirmities.[13] We agree with the Second Circuit's position.

■ However, we remand the $500 award for further proceedings be-

cause it was granted by the Review Board in violation of its own regulations, set forth in the margin.[14] Here the parties agree that the Board made its award without benefit of a "complete statement of the extent and character of the necessary work done" and has not subsequently received such a statement. Counsel for the agency lists factors pointing to the reasonableness of the $500 award and contends that "[t]o submit a time sheet in accordance with the Secretary's Regulation under those circumstances appears foolish and an insult to the Board's intelligence."[15] The requirement of such a statement secures information to enhance the basis for deciding what is "a reasonable attorney's fee."[16] At least in the absence of a reasoned determination that "in a given case the ends of justice require" a departure from an agency's regulations,[17] they must be observed.

We affirm the grant of death benefits to the claimant and remand the award of attorney's fees for further proceedings consistent with the requirements of the Board's regulations.

So ordered.

---

12. We refer to decedent's financial contributions to the claimant as a factor bearing on the existence of a conjugal nexus between them, rather than as evidence that claimant might qualify as a widow because she was dependent for support upon decedent at the time of his death.

13. *See* Overseas African Construction Corp. v. McMullen, 500 F.2d 1291, 1297–98 (2d Cir. 1974). *Accord* Dillingham Corp. v. Massey, 505 F.2d 1126, 1129 (9th Cir. 1974).

14. 20 C.F.R. § 802.203 (1974) Fees for services.

 (a) No fee for services rendered on behalf of a claimant in the pursuit of an appeal shall be valid unless approved pursuant to 33 U.S.C. 928 as amended and the regulations promulgated pursuant to the respective Acts (see §§ 702.132–702.135 and 725.404 of this title).

 20 C.F.R. § 702.132 (1974) Fees for services.

 An attorney or other representative seeking a fee for services performed on behalf of a claimant with respect to claims filed under the Act shall make application thereof to the persons, administrative body, or court before whom the services were performed (see 33 U.S.C. 928(c)). The applica-

tion shall be supported by a complete statement of the extent and character of the necessary work done. Any fee approved shall be reasonably commensurate with the actual necessary work performed, and shall take into account the capacity in which the representative has appeared, the amount of benefits involved and the financial circumstances of the claimant. No contract for a stipulated fee or for a fee on a contingent basis shall be recognized.

15. Brief for Respondent Deputy Commissioner at 14.

16. 33 U.S.C. § 928(a) (Supp. II 1972).

17. *See* American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), *quoting* NLRB v. Monsanto Chemical Co., 205 F.2d 763, 764 (8th Cir. 1953). The availability of this limited exception would appear to turn on whether the regulations were intended to "confer important procedural benefits" upon the parties before the agency or whether they are merely procedural rules for the orderly transaction of agency business. *See* American Farm Lines, *supra,* at 538–39, 90 S.Ct. 1288, 25 L.Ed.2d 547.