**BETA CONSTRUCTION COMPANY and PMA Group Insurance Company, Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Carolyn Lewis, Intervenor.**

**No. 98–AA–448.**

District of Columbia Court of Appeals.

Argued Feb. 24, 2000.

Decided April 6, 2000.

Gerard J. Emig, Rockville, MD, with whom Thomas K. McCraw, Jr., Washington, DC, was on the brief, for petitioners.

Mark L. Schaffer, Washington, DC, for intervenor.

Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before SCHWELB and WASHINGTON, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Petitioners Beta Construction Company and PMA Group Insurance Company challenge the decision of the Director of the District of Columbia Department of Employment Services ("Director") affirming a compensation order which granted benefits to Carolyn Lewis, the intervenor, following the work-related death of her husband, Stanley Lewis. The Director concluded that Lewis is entitled to receive death benefits as a "widow" under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 et seq. (1997 Repl.) ("D.C.Act"). Petitioners contend that the Director's decision should be reversed because it is not supported by substantial evidence that Lewis and her husband (the decedent) were "living apart for justifiable cause," see D.C.Code § 36–301(20). Because we conclude the Director's decision was supported by substantial evidence, we affirm.

## I.

Carolyn Lewis testified before the hearing examiner regarding her marriage to the decedent, and the hearing examiner found her to be a credible witness. The following facts were established by her testimony, which was not controverted. Lewis and the decedent were married in August 1972 and they had one child, Nikita, born in 1977. In 1985, the marriage began to undergo serious strains when the decedent failed to provide support for the family, including payment of rent and other necessaries. As a result, Lewis took a second job. In 1986, Lewis separated from the decedent in the midst of an eviction proceeding, taking with her Nikita and Sharita, another daughter who was not the child of the decedent. Lewis obtained her own apartment, and decedent's non-support continued. Although Lewis never filed for divorce from the decedent, she filed for child support, and an order was entered by the Circuit Court for Prince George's County, Maryland, in March 1988 ordering the decedent to pay

$400 per month. A wage garnishment order subsequently was entered due to the decedent's failure to comply with the child support order.

Lewis testified that she and the decedent reunited for two brief, unsuccessful attempts at reconciliation, from December 1989 to February 1990 and from August 1990 until October 1990, shortly before his work-related death on November 14, 1990. She testified that the attempted reconciliations were not successful because the decedent, despite his promises, again failed to provide financial support for the family. She further testified, however, that she and the decedent saw each other frequently and generally spoke on a daily basis, either by telephone or in person. She testified that they maintained marital relations during the period of separation, that she never attempted to divorce him, never lived with anyone else, filed her tax returns as a married person filing separately, and was the named beneficiary on one of the decedent's life insurance policies and on his union pension plan.

## II.

In reviewing a DOES decision "[w]e will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record." *Oubre v. District of Columbia Dep't of Employment Servs.*, 630 A.2d 699, 702 (D.C.1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985) (citations omitted). "The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history." *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988) (citations omitted). "Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation

of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Id.* (citations omitted).

The definition of "widow" in D.C.Code § 36–301(20) "includes the decedent's wife . . . living with or dependent for support upon the decedent at the time of his death; or living apart for justifiable cause or by reason of his or her desertion at such time." The parties agree that Lewis and the decedent were living apart at the time of his death, and that her receipt of death benefits on his behalf is dependant on a finding that they were living apart "for justifiable cause." This court has not interpreted the phrase "justifiable cause" in the context of § 36–301(20). However, the phrase was interpreted in several cases under the federal Longshoremen's and Harbor Workers' Compensation Act ("Longshoremen's Act"), 33 U.S.C. §§ 901 *et seq.*, made applicable to claims brought in the District of Columbia under the predecessor workmen's compensation statute, D.C.Code §§ 36–501 *et seq.* ("former D.C. law").[1]

In *Weeks v. Behrend,* 77 U.S.App.D.C. 341, 135 F.2d 258 (1943), the court interpreted "justifiable cause" under the Longshoremen's Act in a case brought under the former D.C. law. The court held that the appellant was not living apart from the decedent "for justifiable cause" where the couple had separated to enhance the husband's eligibility for public employment. *Id.* at 342, 135 F.2d at 259. The court reasoned that "the term 'justifiable cause' . . . familiar in connection with divorce and separation . . . is substantially equivalent to 'a matrimonial offense.' " *Id.* In that

case, there was no claim of misconduct, the parties lived apart by mutual consent, and the decedent had not been supporting the claimant, though there was no evidence that he was able to do so. *Id.* In sum, the wife "voluntarily live[d] apart from [the husband] without great provocation." *Id.*

*Weeks'* requirement of a matrimonial offense was significantly undermined by the United States Supreme Court's decision in *Thompson v. Lawson,* 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733 (1954).[2] Although the Supreme Court was applying a different clause of the Longshoremen's Act in *Thompson,* its reasoning is significant.[3] In holding that the petitioner was not a "widow" because she was not living apart from the decedent "by reason of his desertion," the court stated, "We do not reach this conclusion by assessing the marital conduct of the parties. That is an inquiry which may be relevant to legal issues arising under State domestic relations law. Our concern is with the proper interpretation of the Federal Longshoremen's Act." *Id.* at 336, 74 S.Ct. 555. The Court continued, "Considering the purpose of this federal legislation and the manner in which Congress has expressed that purpose, the essential requirement is a conjugal nexus between the claimant and the decedent subsisting at the time of the latter's death, which, for present purposes, means that she must continue to live as the deserted wife of the latter." *Id.* at 336–37, 74 S.Ct. 555. The Court cited the petitioner's remarriage in finding the nexus "wholly absent." *Id.* at 337, 74 S.Ct. 555.

■ The inquiry, thus, is a two-pronged one. First, it must be determined if the

---

1. At all relevant times, the Longshoremen's and Harbor Workers' Compensation Act contained language substantially identical to that of the present statute, defining "widow" to include "only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time." 33 U.S.C. § 902(16).

2. The D.C. Circuit found *Thompson* to be applicable to the former D.C. law in *Liberty Mut. Ins. Co. v. Donovan,* 95 U.S.App.D.C. 49, 218 F.2d 860 (1955).

3. Indeed, the Court noted, "It was not contended before us that in the circumstances of this case the phrase 'for justifiable cause' has a different reach than the phrase 'by reason of his desertion.' " *Id.* at 336 n. *, 74 S.Ct. 555.

claimant and the decedent were living apart for justifiable cause. It must then be determined if there was a conjugal nexus between them that subsisted at the time of the decedent's death. If both are established, the claimant is entitled to receive death benefits as a widow.

■ In the case before us, the hearing examiner and the Director both relied on the reasoning in *Matthews v. Walter,* 168 U.S.App.D.C. 27, 512 F.2d 941 (1975).[4] In *Matthews,* the D.C. Circuit concluded, as we do, that *Thompson* undermined "the narrow construction of 'justifiable cause' offered in *Weeks.*" *Id.* at 30, 512 F.2d at 944. Refusing to require proof of a matrimonial offense, the court held that the decedent's drinking and its effect on the claimant's minor children constituted justifiable cause for the separation. *Id.* Here, the claimant separated from the decedent when he refused to provide support for the family and, despite her having taken a second job, they were evicted from their apartment. Since the claimant was not able to provide shelter for her children in the circumstances where the decedent was not contributing financially, she was justified in moving into a smaller apartment with the children.[5] These circumstances continued to the time of decedent's death, as evidenced by the two attempted reconciliations which failed when the decedent, again, refused to contribute to the household. Thus substantial evidence supports the finding that the claimant and decedent were living apart for justifiable cause.

■ "[T]he conjugal nexus test focuses on the real status of the claimant in respect to the deceased, not the existing legal formalities of the relationship." *Id.* at 30–31, 512 F.2d at 944–45 (quoting *Liberty Mut., supra* note 2, 95 U.S.App.D.C. at 51, 218 F.2d at 862). In *Matthews,* the court held that "[c]laimant's continued sexual relations with decedent, her consistent holding out as decedent's wife, her solicitude to decedent during his 1969 illness, his contribution of funds from his meager income, his knowing acceptance of claimant's relationship with [another man, with whom she bore a child], the absence of an attempt by either party to remarry, and the fact that claimant never lived in the same abode with [the other man] all constitute a complex of circumstances that are substantial evidence to support a finding of a conjugal nexus[.]" *Id.* at 31–32, 512 F.2d at 945–46.

■ The uncontradicted testimony before the hearing examiner was that the claimant maintained an intimate relationship with the decedent, never lived with

---

**4.** As a D.C. Circuit opinion issued after February 1, 1971, *Matthews* does not bind us under *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). However, the D.C. Circuit was the only appellate court with jurisdiction to review cases arising under the former D.C. law, even after February 1, 1971. *See* 33 U.S.C. § 921(c); *Harrington v. Moss,* 407 A.2d 658, 663 n. 8 (D.C.1979). Cases arising under the former law are those in which injury was incurred before July 26, 1982, the effective date of the current D.C. Act. *Harris v. District of Columbia Office of Worker's Compensation,* 660 A.2d 404 (D.C.1995). We conclude that when interpreting the current D.C. Act, we should give considerable deference to post-*M.A.P.* decisions of the D.C. Circuit interpreting the Longshoremen's Act under the former D.C. law. *See Newman v. District of Columbia,* 518 A.2d 698, 704 (D.C.1986) (stating that "[b]ecause the language of the statutes is identical, and because the legislative history reveals that the [District's] Merit Personnel

Act's compensation provisions are essentially an enactment of current federal law," decisions under the analogous federal law are entitled to considerable deference in determining the meaning of the D.C. law).

**5.** Indeed, courts have held that a claimant's separation from a decedent was justifiable on lesser grounds than drunkenness or threatened homelessness, "if the wife's departure can be said to be defensible in the circumstances." A. Larson, 5 Larson's Workers' Compensation Law, § 96.06[3] (1999). *See, e.g., Cole v. Bemis Bros. Bag Co.,* 215 Tenn. 259, 385 S.W.2d 103 (1964) (claimant did not want to move back into neighborhood where deceased's alleged ex-girlfriend lived); *Confer v. Herbert R. Imbt, Inc.,* 191 Pa.Super. 74, 155 A.2d 382 (1959) (frequent domestic dissension between claimant and members of deceased husband's family).

another man, held herself out as the decedent's wife, and never attempted to divorce the decedent. Although the petitioners attempt to undermine the weight of this evidence, they point to no evidence that contradicts it. Petitioners argue, for example, that naming decedent as her spouse on her tax returns, claimant was "merely doing what the law requires of her." Such arguments cannot mask petitioners' failure to point to any evidence in the record that would support a finding that claimant did not hold herself out as decedent's spouse. Indeed, the unchallenged testimony regarding two attempted reconciliations in the year immediately preceding decedent's death supports a finding that claimant had not abandoned the marriage. Similarly, claimant's testimony on the subject with her ongoing intimate relations and regular communication with the decedent, while not detailed, was not rebutted, although petitioners had the opportunity to probe these issues on cross-examination. Finally, the extent of decedent's financial contributions to the claimant, while one factor considered by the court in *Matthews, see* 168 U.S.App.D.C. at 32, 512 F.2d at 946, was not dispositive in that case. Here, the parties agree that it was the lack of financial contribution that provided claimant's "justifiable cause" for living apart from the decedent. It would be illogical and unfair for us to conclude that the same lack of financial support undermines the existence of a conjugal nexus between them.

Viewing the "complex of circumstances," *id.,* with which we are presented today, we are satisfied that substantial evidence supports the finding that the claimant was living apart from the decedent for justifiable cause and that a conjugal nexus existed between them at the time of his death. Accordingly, the Director's decision is affirmed.

*So ordered.*