*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-910

ERIC DALY, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

RJ REYNOLDS, ET AL., INTERVENORS.

Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-048-14)

(Submitted June 23, 2015                                    Decided August 6, 2015)

*Michael J. Kitzman* was on the brief for petitioner.

*Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the statement in lieu of brief for respondent.

*Tony D. Villeral* was on the brief for intervenors.

Before BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*: Petitioner Eric Daly challenges the

Compensation Review Board's ("CRB") decision affirming the denial of his

request for a twenty-percent penalty to be levied on intervenors RJ Reynolds and ACE ESIS, Inc. ("ACE"), the employer and insurer, respectively. Daly claims that a penalty is warranted because intervenors failed to pay him the amount owed within ten days after it became due as required by the District of Columbia Workers' Compensation Act ("Workers' Compensation Act" or "Act"). *See* D.C. Code § 32-1515 (f) (2012 Repl.) ("If any compensation . . . is not paid within 10 days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20% thereof . . . ."). We affirm.

## I.  Factual Background

Daly claimed to have suffered a work-related injury during the course of his employment with RJ Reynolds. The parties entered into a settlement agreement in which intervenors agreed to pay Daly a lump sum amount in exchange for Daly releasing intervenors from further liability. On July 31, 2012, the Office of Workers' Compensation ("OWC") approved the settlement agreement, and copies of OWC's approval order were mailed by certified mail to the parties the next day on August 1, 2012. Daly received his lump sum payment from intervenors on August 17, 2012. On August 20, 2012, Daly filed a motion requesting OWC to assess a twenty-percent penalty on top of the lump sum payment because

intervenors had failed to pay him within ten days of payment being due as required by D.C. Code § 32-1515 (f).  Specifically, he claimed that payment was due by August 10th, ten days after OWC mailed the approval order.  He also claimed that his counsel emailed a copy of the order to intervenors' counsel on August 3rd, and sent a follow-up email on August 13th regarding the status of payment.  Intervenors opposed, chiefly arguing that, by law, payment was due within ten days of them receiving the approval order, not ten days upon OWC's issuance of the order.  In support of their claim that payment was timely, intervenors submitted a date stamped copy of the approval order marked August 7, 2012, as proof of when they received the order from OWC.  Consequently, no penalty was warranted, intervenors argued, because the date of payment, August 17th, was within ten days of intervenors receiving notice on August 7th.

In a written order, OWC denied Daly's motion to assess a penalty on intervenors.  The claims examiner implicitly agreed with intervenors' argument that the clock started to run upon intervenors' receipt of the approval order, not upon issuance of the order as Daly had argued.  Thus, because intervenors did not receive a certified copy until August 7, 2012, their payment on August 17th was not untimely.  Notably, the claims examiner admitted that OWC could not find the "certified card" indicating the date of receipt within its own records, but

nonetheless found it "reasonable" that the document would have been received by intervenors "on or about August 6th or 7th since the 4th and 5th of August 2012 fell on a Saturday and Sunday."[1]

Daly appealed the decision to the CRB. On appeal, Daly essentially abandoned his argument that payment was due within ten days upon OWC's issuance of the approval order. Rather, Daly argued that intervenors received actual notice of the order on August 3, 2012, the date Daly's counsel had emailed intervenors' counsel a copy of the order, and that the date of payment, August 17th, was thus still outside of the ten-day statutory period. Alternatively, he also argued that the claims examiner's conclusion that it was "reasonable" that intervenors would not have received notice until August 7th was not supported by evidence and an arbitrary decision.

---

[1] Moreover, even assuming payment was late, the claims examiner concluded that no penalty was warranted because any delay was due to circumstances outside intervenors' control, an alternative basis for denying the penalty. *See* D.C. Code § 32-1515 (f) ("The Mayor may waive payment of the additional compensation after a showing by the employer that owing to *conditions over which he had no control* such installment could not be paid within the period prescribed for the payment." (emphasis added)). Specifically, the claims examiner credited intervenors' reason that their claims representative, who was responsible for issuing payments, was unexpectedly out of the office due to a family death, and did not personally receive notice until August 16, 2012.

The CRB affirmed the OWC's decision, concluding that the time for payment does not begin to run until *service* of the approval order is made, which it concluded to be the "date of receipt by service of delivery from either OWC or the Administrative Hearings Division." To support this conclusion, the CRB cited to the Workers' Compensation Act regulation explaining that OWC shall effectuate service by hand delivery or certified mail, *see* 7 DCMR § 228.1, and some of its prior decisions in which the CRB came to the same conclusion. *See, e.g.*, *Lytes v. District of Columbia Water and Sewer Auth.*, CRB No. 07-029, at *2-3 (May 29, 2007). Accordingly, because in this case the only evidence in the record showed intervenors receiving the certified copy of the approval order on August 7, 2012, the CRB concluded that time did not begin to run until that date, and that the date of payment, August 17th, was thus timely. The CRB further concluded that it was "irrelevant if or when [Daly] provided a copy of the approval order to [intervenors]," in reference to the August 3rd email sent to intervenors' counsel, because the "only relevant date" is when the certified copy of the approval order was received by intervenors. This petition for review followed.

## II.  Discussion

On petition for review, Daly principally challenges the CRB's legal conclusion that the clock does not start to run for purposes of the statutorily defined ten-day payment period until service of the approval order is made, that is, in this case, the date intervenors received the order by certified mail from OWC. The issue raised requires us to determine when payment by the employer becomes "due," pursuant to D.C. Code § 32-1515 (f).  Essentially, Daly contends that the clock starts to run the moment intervenors "actually received," i.e., had knowledge of, the approval order, not when OWC effectuated service, as the CRB had determined.  In support of this argument, Daly cites to 7 DCMR § 228.4, which states that "[w]henever the Act . . . provides a time period during which an action is to be taken, unless otherwise expressly provided, the time period shall run from the *actual receipt of a document*."  (emphasis added).  Thus, in Daly's view, because there is no real dispute that Daly's counsel had notified intervenors about the approval order and provided them a copy via email on August 3rd, intervenors "actually received" the approval order on that date, and thus payment was due within ten days of August 3rd, not August 7th, as the CRB had concluded.[2]

---

[2]  Daly raises two other claims which we address summarily.  He argues that, even assuming RJ Reynolds received the order on August 7, 2012, the CRB

(continued…)

Preliminarily, we note that this is a statutory construction issue of first impression, as we recently remanded the same legal issue in another case back to the CRB to explain why the term "actual receipt," as defined under 7 DCMR § 228.4, should be read "in conformance" with the service provisions of the regulation, 7 DCMR § 228.1. *See Romero v. District of Columbia Dep't of Emp't Servs.*, No. 14-AA-342, Mem. Op. & J. at 2 (D.C. Mar. 11, 2015). However, because this court "remain[s] the final authority on issues of statutory construction," *Nunnally v. District of Columbia Metropolitan Police Dep't*, 80 A.3d 1004, 1011 (D.C. 2013) (citations and internal quotation marks omitted), and because this case hinges on the CRB's interpretation of the Act and associated regulations, we now decide to answer this question. We hold that, for purposes of

---

(…continued)

erred by failing to remand the order for the claims examiner to factually determine when the *third copy* of the approval order was received by ACE, the insurer in this case. However, our review of Daly's memorandum in support of his application for review reveals that this particular argument and request was never presented before the CRB. Specifically, he only made two arguments in his memorandum: (1) that the approval order was received on August 3, 2012; and (2) alternatively, the claims examiner's conclusion that the approval order was not received until August 7, 2012, was unsupported by the evidence and arbitrary in nature. Daly presents no reasons as to why this remand argument was not raised before the CRB, and therefore we need not consider it now. *See, e.g.*, *Oparaugo v. Watts*, 884 A.2d 63, 75 (D.C. 2005) ("Points not raised and preserved [below] will not be considered on appeal, except in exceptional circumstances that are not present here."). Second, he argues that intervenors' claim that any delay was outside their control is an insufficient ground to annul the penalty. We take no position on this argument because the CRB did not appear to address it and, based on our decision *infra*, we conclude the payment was timely.

when compensation becomes "due" under D.C. Code § 32-1515 (f), the ten-day period for payment shall begin to run from the date the employer is served with the compensation order by the OWC or the Hearings and Adjudication Section. This can be done either by hand delivery or via certified mail/registered mail, return receipt requested. *See* D.C. Code § 32-1515 (f); 7 DCMR § 228.1 (a)-(b). We explain our reasons below.

"Our standard of review of agency decisions in workers' compensation cases is governed by the District [of Columbia's] Administrative Procedures Act." *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1159 (D.C. 2012) (citation and internal quotation marks omitted). The CRB's interpretation of an administrative statute is reviewed de novo, "recognizing that this court is the final authority on issues of statutory interpretation." *Fluellyn*, *supra*, 54 A.3d at 1160 (citation and internal quotation marks omitted). However, in recognition of the agency's expertise, if a statutory provision is subject to interpretation, "we [will] accord great weight to any reasonable construction of a statute by the agency charged with its administration." *Id.* (citation and internal quotation marks omitted). Accordingly, "[w]e must sustain [the CRB's] interpretation even if a petitioner advances another reasonable interpretation . . . ." *Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 97 (D.C. 1988).

An employer's obligation to pay an injured employee under the Workers'
Compensation Act is governed by statute. D.C. Code § 32-1515 (f) states:

> *If any compensation, payable under the terms of an
> award, is not paid within 10 days after it becomes due,
> there shall be added to such unpaid compensation an
> amount equal to 20% thereof*, which shall be paid at the
> same time as, but in addition to, such compensation
> unless review of the compensation order making such
> award is had as provided in § 32-1522[3] and an order
> staying payments has been issued by the Mayor or court.
> The Mayor may waive payment of the additional
> compensation after a showing by the employer that
> owing to conditions over which he had no control such
> installment could not be paid within the period prescribed
> for the payment.

(Emphasis added). The sole issue before us is whether the lump sum payment
approved by the OWC in this case was "paid within 10 days after it becomes due"
for purposes of determining whether intervenors incurred a statutorily mandated
twenty-percent penalty. Determining this issue is more difficult than it may first
appear because it requires answering two questions: (1) when does payment
become "due;" and (2) when is payment deemed "paid?" In other words, what are
the start and stop times of this ten-day period?

---

[3] D.C. Code § 32-1522 (2012 Repl.) pertains to the review procedures for
compensation orders that are challenged.

We answered the second question in *Orius Telecomm., Inc. v. District of Columbia Dep't of Emp't Servs.*, 857 A.2d 1061 (D.C. 2004) ("*Orius*"). We held that the term "paid" in this context means money actually received, not the date payment was posted, i.e., the "mail-box rule," as petitioner had argued. *Id.* at 1067. In particular, we noted that the agency had "longstanding precedent on the proper imposition of the late payment penalty[,]" holding that "compensation must be received by the party during the requisite period to avoid the imposition of the penalty," *id.* at 1066, and that because this interpretation was "neither unreasonable nor contrary to law, we must sustain it." *Id.* at 1067. Here, Daly received payment, and therefore was "paid," on August 17, 2012.

Notably, in *Orius*, we did not explicitly answer the first question: when is payment "due," such that the ten-day time limit for payment *begins* to run. The phrase "after it becomes due" is ambiguous because the statute does not explain or define how the ten-day payment period is first triggered. We did not clearly decide this question in *Orius*, not because it was unnecessary to resolve the issue, *id.* at 1070 ("[T]he case could not have been sum totaled until the court ascertained when the ten-day time limit for payment began to run."), but because counsel for petitioners (the employer/insurer) essentially conceded during oral arguments that the time period commenced when petitioners received the compensation order

from the administrative law judge via certified mail. *Id.* at 1063, 1070-71. We further appeared to reject the argument that the ten-day time limit began to run the day on which the compensation order was mailed to the parties. *Id.* at 1070. Specifically, we observed that such a conclusion would "run[] glaringly contrary to both DOES regulation and prior administrative decisions . . . determining that a compensation order becomes due on the date on which the employer/carrier *receives* the compensation order *via certified postal mail*." *Id.* (emphasis added) (citing 7 DCMR § 228.4).

While the court's observations in *Orius* on this point are not binding precedent, given the concession in that case, we have no problem in now formally holding that payment becomes "due," under D.C. Code § 32-1515 (f), within ten days of the employer/insurer receiving notice of either OWC's or the Hearings and Adjudication Section's order via certified mail or registered mail, return receipt requested, if that is the method on which the administrative agency decided to serve the party. *See* 7 DCMR § 228.1 (listing both hand delivery and certified mail/registered mail delivery with return receipt requested as acceptable forms of service). We find persuasive the observations made by the court in *Orius*, and our own review confirms that the CRB has in prior instances determined that an order becomes due within ten days from the date on which the employer/issuer received

notice of the order via certified mail from the agency. *See Orius*, *supra*, 857 A.2d at 1066; *Lytes*, *supra*, CRB No. 07-029, at \*2-3.

This interpretation is also reasonable. As the CRB explained in *Lyte*, there is a reason why the clock starts running only once the employer is served by the agency: "The obligations and conditions of the agreement were not in effect until both parties received proper notice from OWC, as there is no authority under the Act or regulations for OWC to delegate its obligation to provide proper notice to [the employee] in this matter." *Lyte*, *supra*, CRB No. 07-029, at \*2-3. In other words, because the agency administers the Workers' Compensation Act, including payments of compensation and the decision of whether or not to levy a twenty-percent penalty for late payments, the employer's legal obligation to pay is triggered upon agency action. *See* D.C. Code § 32-1502 (a) (2012 Repl.) ("The *Mayor shall administer* the provisions of this chapter . . . ." (emphasis added)); D.C. Code § 32-1515 (f) ("The *Mayor* may waive payment of the additional compensation . . . ." (emphasis added)).

Daly's reliance on 7 DCMR § 228.4 (to argue that time begins to run whenever a party alerts an employer/insurer of the payment order) does not dissuade us from affirming the CRB's interpretation of when payment is deemed

"due." 7 DCMR § 228 pertains to the serving, filing, and posting of documents under the Workers' Compensation Act. 7 DCMR § 228.1 states that service by OWC or the Hearings and Adjudication Section:

> [S]hall be accomplished by . . . (a) Hand deliver[ing] the document to each interested party and secur[ing] the signature of the recipient; or (b) Mail[ing] the document by certified or registered mail, return receipt requested, to the last known record address of each party; and (c) Retain[ing] a copy for the official record.

It is within these regulations pertaining to service that we find 7 DCMR § 228.4, which states that, "Whenever the Act or this chapter provides a time period during which an action is to be taken, unless otherwise expressly provided, the time period shall run from the *actual receipt of a document*." (emphasis added).

Daly argues that the emphasized text above means that the ten-day time period under D.C. Code § 32-1515 (f) began to run the day intervenor had "actual notice," essentially, knowledge, of the approval order, which Daly argues began on August 3rd when Daly's counsel forwarded a copy of the order to intervenors' counsel via email. However, other than a "plain reading" of this term, Daly has provided little legal support for this argument. While we note at the outset that Daly's interpretation of the phrase "actual receipt" is not unreasonable if read in isolation, *see, e.g.*, *Jones v. Hersch*, 845 A.2d 541, 546 (D.C. 2004) (explaining "actual notice" as when a party has actual knowledge of the action even if there

was legally ineffective service), it is well-established that we must read the statute or regulation "as a whole" to see if there are alternative constructions of the challenged language. *See District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C. 2006). Reading 7 DCMR § 228 as a whole, and keeping in mind that payment orders are directed by *agency action*, we think that it is reasonable to interpret § 228.4 as requiring payment orders to be served by either OWC or the Hearings and Adjudication Section in order for the parties to be in "actual receipt" of it. Because there is a reasonable interpretation of "actual receipt" consistent with the CRB's interpretation that time begins to run for payment purposes on the date service is made by the agency, we must affirm the CRB's interpretation, even though Daly advanced another interpretation. *See Smith*, *supra*, 548 A.2d at 97 ("[w]e will sustain [the CRB's] interpretation even if a petitioner advances another reasonable interpretation . . . .").

Having concluded that, under D.C. Code § 32-1515 (f), payment was "due" within ten days upon intervenors receiving the approval order via certified mail from OWC, the CRB did not err in further concluding that there was substantial evidence supporting the claims examiner's decision to deny the penalty. *See generally Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012). As the CRB noted, the sole evidence presented to the claims

examiner concerning when the approval order was received was the date stamped copy provided by intervenors bearing August 7, 2012. Thus, because there was no other evidence to suggest a different date of receipt, there was substantial evidence supporting the CRB's affirmance of the claims examiner's decision that payment on August 17, 2012, was not untimely.

### III. Conclusion

We affirm the CRB's decision sustaining the claims examiner's order to deny Daly a penalty award of twenty-percent of the lump sum payment owed by intervenors under the terms of their settlement agreement. The payment on August 17, 2012, was not untimely because the ten-day time period for payment did not start to run until intervenors received notice of the approval order by certified mail from OWC, which the evidence reflects was on August 7, 2012.

*So ordered.*