McLeese, Associate Judge, concurring:
I join the opinion of the court in its entirety. I write separately to briefly address the dissent's contention that the division in this case is bound by an earlier holding in Green v. United States , 974 A.2d 248 (D.C. 2009). The opinion for the court concludes to the contrary that the court in Green simply accepted a concession without ruling on the correctness of that concession. Ante at 657-58. In large part, the dissent's contrary interpretation of Green rests on the contention that "[p]arties do not, by agreement or concession, relieve the court of its responsibility to decide questions of law that determine the proper disposition of a case." Post at 668-69. Although there is support for that contention, the topic is more complicated than the dissent suggests. Appellate courts, including the Supreme Court and this court, often give judgment without deciding legal issues that might have led to a different disposition of a case. For example, doctrines such as estoppel, waiver, and forfeiture often lead appellate courts to take as given legal principles that the courts might not have accepted on the merits if those legal principles had been properly presented for decision. Reliance on such doctrines does not reflect "abandon[ment of the] judicial role." Post at 669. Rather, reliance on such doctrines reflects courts' understanding of limits on the judicial role imposed by considerations of both prudence and procedural fairness to litigants. See, e.g. , Rose v. United States , 629 A.2d 526, 536-37 (D.C. 1993) (under "our adversarial system," appellate courts generally act as "arbiters of legal questions presented and argued by the parties before them") (internal quotation marks omitted).
In the context of affirmative concessions, this court, like other appellate courts, frequently renders judgment based on legal conclusions that it assumes without deciding because they are not contested by the parties. See, e.g. , Frey v. United States , 137 A.3d 1000, 1002 (D.C. 2016) ("The parties in this case, however, do not dispute that, generally speaking, the Adams Building is a public building for purposes of the unlawful-entry statute. We accept that premise without deciding the question."; reversing judgment). Merger cases are a recurring example. See, e.g. , Bernal v. United States , 162 A.3d 128, 130 n.2 (D.C. 2017) ("The government concedes that Counts Three and Four, only, merge. Accordingly, we remand solely for the trial court to vacate appellant's conviction for Count Three."). Moreover, despite the language the dissent cites from the Supreme Court's 1942 decision in Young v. United States , 315 U.S. 257, 258-59, 62 S.Ct. 510, post at 668-69, the Supreme Court itself often (although not invariably) reverses or vacates judgments in criminal cases based on government concessions, without independently evaluating whether the concession was correct. See, e.g. , Nunez v. United States , 554 U.S. 911, 128 S.Ct. 2990, 171 L.Ed.2d 879 (2008) (per curiam). Even Justice Scalia, who was critical of reflexively doing that, acknowledged over twenty years ago that "[t]he practice is by now well entrenched."
*666 Lawrence v. Chater , 516 U.S. 163, 184, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (Scalia, J., dissenting). In any event, the issue in this case is not whether the court in Green acted permissibly by simply accepting a concession without independently ruling on the correctness of the concession. Whether permissible or not, that is in fact what the court did in Green .
Finally, contrary to the assertion of the dissent, the difference between the outcome of this case and the outcome in Green does not "violate[ ] the constitutional principle that similarly situated parties should be treated equally." Post at 667. The defendant in Green objected in the trial court and the United States conceded the validity of his objection on appeal. In the present case, Mr. Briscoe did not object in the trial court and the United States has contested his claim on appeal. These important procedural differences mean that the defendant in Green and Mr. Briscoe are simply not similarly situated. See, e.g. , United States v. David , 83 F.3d 638, 643 n.6 (4th Cir. 1996) ("[A] defendant who objects to an alleged error ... is not similarly situated to a defendant who did not ....") (citation and internal quotation marks omitted).
Separate statement by Thompson, Associate Judge:
Our dissenting colleague laments that the result of the majority's disposition of this case is that similarly situated parties-appellant and the defendant in Green -have not been treated equally. If what our colleague means is that the trial court in Green on remand exercised sentencing discretion while the trial court here did not, I emphasize that it is not entirely clear in this case that the trial judge thought he was bound to impose mandatory-minimum sentences and therefore failed to exercise sentencing discretion as to the while-armed and PFCV offenses. The court observed that mandatory-minimum sentences, which it characterized as an expression of the sentence the Council deemed "appropriate under the circumstances," made sentencing "difficult." At least arguably, the court would not have regarded sentencing as difficult if it thought all it had to do was impose mandatory-minimum terms of incarceration. Thus, it is not clear that appellant, unlike Green, was deprived of the benefit of trial court sentencing discretion.[1]
I also think it overstates the case to say that appellant and Green are "similarly situated" defendants entitled to "equal treatment." Post at 667. Green had a gun in his waistband at the time of his arrest for possession with intent to distribute drugs, and there was no evidence that he had brandished or used the weapon to assault anyone. 974 A.2d at 251. On resentencing, he was sentenced to time served, or about three years. Appellant, by contrast assaulted and robbed the victim at gunpoint and pulled the trigger. He had "greater engagement with the weapon," to use our colleague's language. Post at 673 n. 12. In the trial court's language, appellant made the victim's life "very difficult." Appellant's sentence of 60 months for conduct that had "a really hard impact" on the victim does not support concern about his having to serve an unequal sentence.
Our dissenting colleague also emphasizes the statutory language that it is when the trial court finds that a youth offender "will not derive benefit from treatment *667 under [ D.C. Code § 24-903 (b) (providing for "treatment and supervision" up to the "maximum penalty of imprisonment otherwise provided by law") ]" that the court "may sentence the youth offender under any other applicable penalty provision." D.C. Code § 24-903 (d). The point is somewhat beyond the point because, according to a September 8, 2017, report by the Criminal Justice Coordinating Council for the District of Columbia ("CJCC") entitled "The District's Youth Rehabilitation Act: An Analysis," "at present, there are no programs that are specifically developed to supervise or treat those sentenced under the YRA." September 8, 2017, CJCC Report at 34.
Ruiz, Senior Judge, dissenting in part:
I would remand the case for resentencing by the trial court to exercise discretion under the D.C. Youth Rehabilitation Act, D.C. Code § 24-903 (2012 Repl.) (YRA), as we did in Green v. United States , 974 A.2d 248 (D.C. 2009). The trial court made a determination that appellant would benefit from sentencing under the YRA, but believed that a 5-year minimum sentence was required by law for conviction for a while-armed offence, D.C. Code § 22-4502 (a) (2012 Repl.), and PFCV, D.C. Code § 22-4504 (b) (2012 Repl.). This was a clear error. The YRA allows the court to impose a sentence less than the otherwise mandatory minimum, if the trial judge deems that a youth offender would benefit from a lesser sentence. In this case, there is reason to believe the trial court would have exercised that discretion to appellant's benefit. The majority's decision to deny a remand for resentencing means that the appellant in this case is being treated differently than the appellant in Green . 974 A.2d at 262. For these reasons I conclude that the trial court plainly erred in imposing the mandatory minimum sentences rather than exercising discretion in sentencing. A remand that will allow the trial court to resentence unfettered by the mistaken belief that mandatory minimum sentences must be imposed is in order. I, therefore, dissent from the majority's decision that denies appellant's request for a remand for resentencing and affirms the imposition of mandatory minimum sentences.[1]
A remand to permit the trial court to exercise YRA discretion falls squarely within our holding in Green , 974 A.2d at 262, n.43, where we remanded for resentencing, noting that the mandatory minimums for while-armed offenses (for a first time offender) and PFCV need not be imposed if the judge believes sentencing a youth offender under the YRA is appropriate. In Green , as is the case here, the trial court believed it was required to impose mandatory minimums, even though sentencing was done under the YRA. Id. This court affirmed the convictions on appeal, but remanded the case for resentencing because "the five-year mandatory minimum terms ... do not have to be imposed when sentencing under the DCYRA." Id. To come to a contrary disposition in this case is directly at odds with our disposition in Green and thus also contrary to our obligation to follow precedent established by a prior division of this court, as required by M.A.P. v. Ryan , 285 A.2d 310, 312 (D.C. 1971). It also violates the constitutional principle that similarly situated parties should be treated equally, as the appellant in Green and appellant here were both youth offenders, convicted of the same offenses, where the trial court decided to sentence under the YRA. See *668 Griffith v. Kentucky , 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Yet only one is accorded resentencing for the exercise of trial court discretion under the YRA, while the other is denied the exercise of that judicial discretion and subjected to two mandatory minimum sentences.[2]
The majority contends that Green should not be given precedential weight because there the court "merely accepted" the government's "concession" regarding the proper interpretation of the relevant statutes rather than deciding the issue for itself. See ante at 657-58. To be clear, the court in Green did not say that it was acceding to the government's concession; nor did the court say it was avoiding deciding the issue, as we sometimes do, because it was unnecessary to do so. See, e.g. , Ferguson v. United States , 157 A.3d 1282, 1290 n.2 (D.C. 2017).[3] Instead, what the Green court did was to remand for resentencing without requiring the imposition of mandatory minimums after it had received full briefing on the dispositive issue of statutory interpretation. The court indicated that it understood the government had taken a contrary position in the trial court and, upon further reflection, had come around to the appellant's view on the proper interpretation of the statutes. The fact that the government conceded on appeal that its initial interpretation was erroneous does not mean that this court accepted that concession unquestioningly. Parties do not, by agreement or concession, relieve the court of its responsibility to decide questions of law that determine the proper disposition of a case. As the Supreme Court has observed, exercise of this judicial duty is particularly important in criminal cases:
The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. See Parlton v. United States , 64 App. D.C. 169, 75 F.2d 772 [ (1935) ]. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. Cf. Rex v. Wilkes , 4 Burr[.] 2527, 2551, 98 Eng. Rep. 327; State v. Green , 167 Wash. 266, 9 P.2d 62 [ (1932) ].
*669 Young v. United States , 315 U.S. 257, 258-59, 62 S.Ct. 510, 86 L.Ed. 832 (1942).
In order to remand for resentencing in Green , this court had to decide that as a matter of statutory interpretation the trial court was not bound to impose mandatory minimums and could lawfully exercise discretion under the YRA in sentencing youth offenders for a first-time while-armed offense, D.C. Code § 22-4502, and PFCV, D.C. Code § 22-4504 (b). This ruling was an "integrated component" and "essential to the outcome" and is therefore a holding binding on us. Parker v. K & L Gates, LLP , 76 A.3d 859, 874 (D.C. 2013) (Ferren, S.J., concurring); see Seminole Tribe v. Florida , 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); 18 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 134.04 [5] (3d ed. 1999) (noting that stare decisis "may extend beyond issues that are explicitly decided to those which are actually decided by necessary implication").
If, as the majority contends, the Green court did not decide the legal issue of statutory interpretation but merely "went along" with the parties, the court would not only have failed in its responsibility to exercise independent judgment on a question of law but also here acted beyond its authority by remanding so that the trial court could take a judicial action (exercise sentencing discretion under the YRA) it had no legal authority to do (because it was bound to impose mandatory minimum sentences).[4] There is no reason, however, to assume that this court abandoned its judicial role in Green . The parties in the Green case had fully briefed the issue concerning the application of the mandatory minimums for while-armed and PFCV offenses when sentencing youth offenders under the YRA. A question of law was squarely presented and the court was well aware of the arguments on the merits of both sides. The court decided the issue by remanding for resentencing without imposition of mandatory minimums.
Whether a decision is binding is recognized not by the number of words used by the court in arriving at its disposition, but by whether the "issue constituted 'a statement not addressed to the question before the court or necessary for its decision.' " Albertie v. Louis & Alexander Corp. , 646 A.2d 1001, 1005 (D.C. 1994) (quoting United States v. Crawley , 837 F.2d 291, 292 (7th Cir. 1988) ). In Crawley , Judge Posner identified certain hallmarks of non-binding dicta, noting that dicta is "unnecessary to the outcome of the earlier case," that because it is "not grounded in the facts of the case ... the judges may therefore have lacked an adequate experiential basis for it," and "that the issue addressed in the passage was not presented as an issue, hence was not refined by the fires of adversary presentation." 837 F.2d at 292-93.
None of these hallmarks of dicta is present in the Green case. The conclusion that sentencing under the YRA allows for judicial discretion when sentencing a youth offender for violations of D.C. Code §§ 22-4502 (a) and 4504 (b), even when mandatory minimums apply to adults, was necessary for the court's ultimate disposition. Unless it decided that "the five-year mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and 4504 (b) do not have to be imposed when sentencing under the DCYRA," Green , 974 A.2d at 262, n.43, the court would have simply affirmed. Instead, it remanded for resentencing without those constraints. Id. at 262.
*670 Nor can it be said that analysis of the YRA's impact on minimum sentences was not grounded in the facts or properly presented as an issue in Green . The record revealed that the trial court believed mandatory minimums had to be imposed. On appeal, the defendant presented the question to this court, countering arguments the government made in the trial court, and requested a remand for resentencing by the trial court free of the constraint of having to impose the mandatory minimums. For its part, the government laid out, in over seven pages of its brief to the court, the arguments that supported imposition of mandatory minimum sentences. Ultimately, however, the government came to the following legal conclusion with respect to the proper interpretation of the relevant statutory provisions:
In sum, while the government argued below and continues to believe that an argument can be made that the mandatory minimum terms in D.C. Code §§ 22-4502 (a) and - 4504 (b) must be applied when imposing a period of incarceration under the DCYRA, the government now concedes that the several statutory provisions and legislative history discussed above create sufficient ambiguity so as to render application of the rule of lenity appropriate. As a consequence, the government does not oppose appellant's request for a remand for re-sentencing.
Government's Br. in Green , 38. The fact that the government came to agree that Green had the better of the argument hardly meant that the issue lacked "the fires of adversary presentation." A request for remand for resentencing was before the court and both sides of the statutory interpretation issues that determined whether resentencing was required were fully briefed by both parties. The court was made aware of the reasoned basis for the conclusion that mandatory minimums do not apply, as well as of the arguments that supported the government's position to the contrary taken before the trial court. As discussed, this court would have been acting in contravention of a statutory mandate by ordering a remand for the exercise of discretion in resentencing under the YRA unless it thought that mandatory minimums did not apply. Perhaps it would have been preferable for the court to give a fuller explanation for its conclusion, but it would not be the first time that an opinion of the court is not as extended as one would like or as is usually the case. Lack of a full exposition does not convert a legal conclusion necessary to the disposition into non-binding dicta. "[N]ot all judicial decisions are crystal clear about the essentials inherent in the outcome .... [what is expected is] language from the court that communicates a clear understanding of the ingredients 'necessary' to every 'holding.' " Parker , 76 A.3d at 874 (Ferren, S.J., concurring).[5] In Green , the court communicated that resentencing was warranted because the trial court had acted under the erroneous belief it was required to impose mandatory minimums. Green , 974 A.2d at 262 n.43.[6]
*671 The majority's conclusion that Green is not binding precedent deviates from the accepted view, as reflected in the Voluntary Sentencing Guidelines Manual, that Green decided the sentencing issue presented in this case.[7] It is also worth emphasizing that the majority does not conclude today that Green 's disposition remanding for resentencing under the YRA was legally incorrect. To the contrary, as Judge Thompson's opinion cogently lays out, the plain statutory language of the while-armed statute, D.C. Code § 22-4502 (e)(1), and its legislative history strongly support that the mandatory minimum is not required for a first-time while-armed youth offender sentenced under the YRA. See ante at 661-62. The majority's sole reason for affirming is that even if the lower court erred in adhering to the mandatory minimum for the while-armed offense, the error is not as clear with respect to PFCV. See ante at 663-64. As a result, imposition of the mandatory minimum for PFCV was not an obvious error, and because of the concurrent nature of the identical sentences imposed for the while-armed and *672 PFCV offenses, the sentencing error with respect to the while-armed offense does not affect appellant's substantial rights. See ante at 664, 664 n. 26.
I disagree with the premise about the PFCV mandatory minimum that underlies this reasoning. As the majority observes, the PFCV statute, unlike the while-armed statute, does not on its face link to the YRA by including an exemption to the mandatory minimum for first-time youth offenders. See D.C. Code § 22-4504 (b). But the task of judicial interpretation requires that the PFCV statute be read in harmony with the YRA. The majority is too quick to dismiss the importance of the discretion granted to sentencing judges by the YRA, arguing that it is not sui generis and therefore should not supersede the mandatory minimum for PFCV. The majority equates the YRA provision dealing with probation, D.C. Code § 24-903 (a)(1), to the general discretion to grant probation afforded to judges when sentencing adults under D.C. Code § 16-710, which has been held not to override mandatory minimums required by statute. See ante at 662-63 n.22. There are several problems with this reasoning. First, the YRA, enacted in 1985, subsequent to the general probation authority in D.C. Code § 16-710, enacted in 1963, expressly provides that the "sentencing alternatives" of the YRA are "in addition to the options already available to the court." D.C. Code § 24-903 (f).[8] The statutory language of the YRA therefore precludes the notion that it is merely repeating a sentencing option already available to the trial court for non-youth offenders. Second, this comparison is faulty because it overlooks that the "sentencing alternatives" of the YRA are not limited to probation and depend on whether the judge has determined that a youth offender will "derive benefit" from sentencing under the YRA. The YRA provides that when a judge determines that a youth offender would derive benefit from YRA sentencing but believes the youth offender should be "committed" (not placed on probation), the judge "may" impose a sentence "for treatment and supervision" up to the "maximum penalty of imprisonment otherwise provided by law." D.C. Code § 24-903 (b). It does not say that the judge must impose a mandatory minimum otherwise provided by law. It is only when a judge finds that a youth offender "will not derive benefit from treatment under subsection (b)," that the court "may sentence the youth offender under any other applicable penalty provision." D.C. Code § 24-903 (d) (emphasis added).[9] The trial judge in this case did not make a determination that appellant would "not derive benefit" freeing him to impose "any other applicable penalty provision." Instead he found the opposite, that appellant would derive benefit, so that the applicable provision is therefore § 24-903 (b), which allows sentencing up to the maximum, but does not require a minimum sentence. Such leeway follows this court's interpretation that a core purpose of the YRA is "to give the court flexibility in sentencing a youth offender according to his or her individual needs." Holloway v. United States , 951 A.2d 59, 64 (D.C. 2008) ; see Veney v. United States , 681 A.2d 428, 434-35 (D.C. 1996)
*673 (en banc). To require the imposition of a mandatory minimum prison sentence when a judge has determined that a youth offender would benefit from rehabilitative sentencing undermines the judicial discretion and flexibility at the heart of the YRA. As the government argued in Green , any statutory ambiguity as to whether mandatory minimums apply to youth offenders sentenced under the YRA should be resolved against mandatory minimums by application of the rule of lenity. See Holloway , 951 A.2d at 65 (applying the rule of lenity in interpreting the YRA where there are "two reasonable constructions") (quoting United States Parole Comm'n v. Noble , 693 A.2d 1084, 1103-04 (D.C. 1997)aff'd on reh'g , 711 A.2d 85 (D.C. 1998) (en banc) ("The rule of lenity ... can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leaves its meaning genuinely in doubt." (internal quotation marks omitted) ) ).[10]
Finally, there is an anomaly in concluding that the while-armed statute does not require a mandatory minimum for first-time youth offenders, but the PFCV statute does. The incongruity arises because the maximum sentences for the two offenses makes it evident that while-armed offenses are deemed to be more serious than PFCV offenses, as the former may be punished by significantly greater periods of imprisonment, up to life without possibility of parole, and the latter up to 15 years.[11] When interpreting statutes, we should do so contextually, with a view to a coherent whole, see Galbis v. Nadal , 626 A.2d 26, 32, n.10 (D.C. 1993), and avoid interpretations that would result in nonsensical results. Moten v. United States , 81 A.3d 1274, 1277 (D.C. 2013) ("[I]f a literal interpretation of the statute would lead to an absurd result, the court will follow the legislative intent despite literal wording." (internal quotation marks omitted) ). It makes little sense to exempt appellant from a mandatory minimum for a while-armed offense yet require it for PFCV.[12]
Having decided that we are bound to follow the court's correct decision in Green , it is easy to conclude that appellant's substantial rights were affected by the trial court's failure to recognize that discretion was permitted in sentencing him as a youth offender under the YRA. That showing, of a "reasonable likelihood" that the error affected the outcome, is "slightly less exacting" in the sentencing context than is required for trial errors.
*674 United States v. Terrell , 696 F.3d 1257, 1263 (D.C. Cir. 2012) ; United States v. Saro , 24 F.3d 283, 288 (D.C. Cir. 1994) (referring to a "somewhat lighter" burden of showing prejudice in the sentencing context). That burden is met in this case, where the record makes clear that the trial judge made a finding that appellant would benefit from rehabilitative treatment, noting that because sentencing was done under the YRA, appellant had the ability to remove the conviction from his record after successfully completing the conditions of supervised release. However, the record is also clear that the judge believed his hands were tied when it came to sentencing and that he had to impose a mandatory minimum because "[i]t is what [the] [C]ity [C]ouncil said is appropriate under the circumstances." The trial judge expressed his discomfort with that requirement, commenting that sentencing was made "difficult" because of the minimum sentences. He commented that "in some respect maybe the mandatory minimum is a little too harsh," but continued to indicate his lack of choice by noting "but it is the mandatory minimum." Upon examining the record, there is a solid foundation to conclude that not only did the trial judge not exercise discretion and imposed the mandatory minimum that he thought was statutorily required, but also that he very well might have exercised discretion to impose a lesser sentence had he known it was permitted. To the extent that we do not know for certain what the trial judge would have done if he thought he could depart from the mandatory minimums, remanding for resentencing would allow the judge to exercise the discretion afforded by the YRA.
Finally, a failure to exercise discretion in this case, contrary to the mandate of the YRA, and contrary to the disposition in Green , would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." Lowery v. United States , 3 A.3d 1169, 1173 (D.C. 2010) (internal quotation marks omitted); see United States v. Olano , 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As the District of Columbia Circuit has held in the analogous area where a sentencing judge imposed a sentence pursuant to the erroneous belief that the Sentencing Guidelines are mandatory and must be applied, the fourth prong is met "whenever the third-prejudice to substantial rights-exists." United States v. Gomez , 431 F.3d 818, 822 (D.C. Cir. 2005) ; Terrell , 696 F.3d at 1264 (same, where sentencing judge imposed sentence under erroneous belief that certain conditions had to be met to impose a below-Guidelines sentence). In this case, there is further cause to be concerned that the "fairness, integrity and public reputation" of this court's proceedings will be affected if the same relief afforded the youth offender in Green is not accorded to appellant. See M.A.P. , 285 A.2d at 312.
For these reasons I would remand the case for resentencing.

Indeed, if what Judge Ruiz calls the "accepted view, as reflected in the Voluntary Sentencing Guidelines Manual" was that Green decided the sentencing issue presented in this case," post at 671 n. 7, that is all the more reason to think the trial judge in this case thought he had sentencing discretion.

I join the remainder of the opinion of the court rejecting appellant's claims under Brady and Rule 16 and affirming the convictions, with a remand for merger of the ADW conviction.

Appellant requested a "lenient" "sentence," the "minimum permissible sentence pursuant to the YRA," but did not expressly challenge the trial court's statements that mandatory minimums were required. That circumstance means that in this case appellant must meet the strictures of plain error review to warrant relief. Once appellant has hurdled those requirements, as I conclude he has, he is entitled to receive a sentence that is the result of individualized judicial discretion on a par with other youth offenders sentenced under the YRA.

The court has other means to signal that a decision does not have precedential effect. For example, it may decide not to publish its opinion and instead issue a Memorandum Opinion and Order. See D.C. App. R. 28 (g) (providing that unpublished opinions may not be cited to the court except for purposes of law of the case, res judicata, collateral estoppel and criminal and disciplinary proceedings involving the same person). Green is a published opinion of the court.

This is the criticism of the court's prior decision leveled in United States v. Garcia-Caraveo , 586 F.3d 1230, 1234 n.2 (10th Cir. 2009), cited by the majority opinion. See ante at 657 n.7.

There is a more expansive view. See Parker , 76 A.3d at 877-78 (McLeese, J., concurring) ("In my view ... it is not accurate to say that only rulings essential to the outcome can constitute holdings.").

The majority's reliance on language found in Daly v. District of Columbia Dep't of Emp't Servs. , 121 A.3d 1257, 1262 (D.C. 2015), that a prior decision is not a holding if based on a "concession" overstates the case. The dispute over statutory interpretation in the Daly case was unnecessary to the disposition in the prior case, where imposition of a late payment penalty fee would have been affirmed because the compensation payment was late regardless of which of two possible statutory interpretations of the term "becomes due" (the issue decided in Daly ) was adopted by the court. See Orius Telecomms., Inc. v. District of Columbia Dep't of Emp't Servs. , 857 A.2d 1061, 1070-71 (D.C. 2004). The "concession" in the prior case was made by counsel during oral argument on appeal and pertained to a factual matter-when notice of an order was received by the employer/insurer-and not on an issue of statutory interpretation that was presented to the court. See id. at 1063 (referring to "the patchy record before us" and "an important concession" made during oral argument); id. at 1064 (noting the ALJ's finding that employer/insurer had not "received proper notification of the compensation order"); id. at 1070-71 (noting that the legal issue was "never expressly stated by either the ALJ or the [DOES] director" and that the court was not thwarted in deciding the case "by the absence of express findings nor the seemingly unsupported assumptions" in the agency's decisions in light of counsel's late concession that he actually received the compensation order, triggering the statutory payment period). An essential principal of stare decisis is that the previous decision concerns an issue of law, not fact. See Moore's Federal Practice § 134.05 [3]. In Daly the court was squarely presented with the issue of statutory interpretation that lurked, but was not decided by the court, in Orius in light of counsel's factual concession. Daly , 121 A.3d at 1262 (noting that "we did not explicitly answer," "did not clearly decide," "we have no problem in now formally holding.") As discussed in the text, in Green the issue of statutory interpretation, a legal issue for the court to decide, was squarely presented, fully briefed, and necessarily underpinned the court's disposition remanding the case for resentencing. In short, we are not in a Daly - Orius situation.

During each of the eight years since Green was decided in 2009, the Voluntary Sentencing Guidelines Manual has stated that "[a] youth offender sentenced under the Youth Rehabilitation Act (D.C. Code § 24-901 et seq . ) for one of the offenses shown here in italics [i.e., first-time while-armed offenses and PFCV] need not be sentenced to a mandatory minimum term." (underlining in original). The Manual cites Green as authority. Voluntary Sentencing Guidelines Manual § 3.6 (The District of Columbia Sentencing and Criminal Code Revision Commission 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016). The 2017 Manual adds a citation to Peterson , which came to a different conclusion with respect to the mandatory minimum for carjacking, see ante at 659-60, and makes the point that with respect to "most offenses that require a mandatory minimum"-the nine offenses with mandatory minimums remaining after this court's decisions in Green and Peterson- this court has "not decided whether a judge who imposes a sentence pursuant to the [YRA] may suspend all or part of the sentence or impose a prison term that is shorter than the mandatory term." The Sentencing Commission expresses no view on the subject. Voluntary Sentencing Guidelines Manual § 3.6 (The District of Columbia Sentencing and Criminal Code Revision Commission 2017). It thus seems quite clear to the Sentencing Commission that Green decided the issue with respect to first-time while-armed and PFCV offenses. It should have been equally clear to the trial court in this case.

D.C. Law No. 6-69, § 4, 32 DCR 4587 (1985); 77 Stat. 559, Pub. Law 88-241, § 1 (1963).

Based on the different language in sections 24-903 (b) and (d), I, therefore, disagree with the majority's assessment that "nothing in the language of the YRA itself suggests that the sentencing discretion it affords to trial judges generally supersedes statutory mandatory minimum sentences." Ante at 662 n.22. A comparison of the language of these subsections of the YRA suggests precisely that, in the case where the trial judge determines that a youth offender would derive benefit.

As the majority recognizes, the Council is aware of the issue of whether mandatory minimums apply to youth offenders. See ante at 663 n.24. I read the Council's comments and actions as indicating that they do not apply. But, at a minimum, the comments add to the ambiguity surrounding the question, which calls for application of the rule of lenity.

In the case of a while-armed offense, an enhancement from 30 years to life imprisonment without possibility of parole may be added to the sentence, depending on the underlying crime. D.C. Code § 22-4502 (a). The maximum sentence for PFCV is much less, 15 years, in addition to the sentence for the accompanying "crime of violence." D.C. Code § 22-4504 (b).

The majority dismisses this glaring sentencing disparity, without any attempt at a reasonable or logical explanation. We have previously stated that the disparity in maximum sentence between the two offenses is a reflection of the fact that the while-armed statute is "very broad" in scope whereas conviction for PFCV may be based on less evidence, of possession including constructive possession, while conviction for a "while-armed" offense requires evidence of greater engagement with the weapon. See Thomas v. United States , 602 A.2d 647, 651, 654 (D.C. 1992). This further supports the notion that if the mandatory minimum sentence for while-armed offenses does not supersede the YRA, neither does the mandatory minimum for PFCV.