*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-655

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, APPELLANT,

V.

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS &
CLARENCE F. STANBACK, JR., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2020-CAP-002154)

(Hon. Shana F. Matini, Trial Judge)

(Argued October 1, 2021                                    Decided April 28, 2022)

*Harrison Stark* for appellant. *Karl A. Racine*, Attorney General for the District of the Columbia, *Loren AliKhan*, Solicitor General (at the time of argument), *Caroline S. Van Zile*, Principal Deputy Solicitor General (at the time of argument), *Ashwin P. Phatak*, Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief for appellant.

*Lasheka Brown Bassey* filed a Statement in Lieu of Brief on behalf of appellee District of Columbia Office of Employee Appeals.

*James E. McCollum, Jr.* for appellee Clarence Stanback.

Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Certain District employees, when they are not meeting expectations at work, can be placed on Performance Improvement Plans, or PIPs. A PIP is a "tool designed to offer the employee . . . an opportunity to demonstrate improvement in his or her performance." 6B D.C.M.R. § 1410.2 (2017).[1] The regulations governing PIPs provide a two-part timeline that is relevant here: (1) a PIP "shall last for a period of thirty (30) to ninety (90) days," with no extensions permitted beyond the ninetieth day, and (2) any determination that the employee did not satisfactorily meet the PIP requirements, and the resulting consequences, must be communicated in writing to the employee "[w]ithin ten (10) calendar days of the end of the PIP period." 6B D.C.M.R. §§ 1410.3, 1410.5. The regulations also specify that any failure "to issue a written decision within the specified time period will result in the employee's performance having met the PIP requirements." 6B D.C.M.R. § 1410.6.

This appeal concerns the consequences of an employer's failure to comply with the above timeline. The District of Columbia Department of Health (DOH) placed its employee Clarence Stanback on what was purported to be a 101-day PIP—

---

[1] The District amended its regulations concerning PIPs in 2019. *See* 66 D.C. Reg. 005868 (May 10, 2019). This opinion refers to the 2017 regulations, which were in effect at the time of Stanback's termination.

eleven days longer than the regulations permit. DOH then notified Stanback of his termination six days after that period concluded, or on day 107 after the PIP began. That was seven days beyond the maximum 100-day period (ninety plus ten) that the regulations allow in total for a PIP and a written determination to be completed.

Stanback challenged his termination before the Office of Employee Appeals (OEA), which agreed with him that DOH's contravention of the ninety-day PIP period and the 100-day PIP-plus-determination deadline precluded his termination. The D.C. Superior Court affirmed. DOH now appeals and maintains that its violation of the regulatory timeline was harmless so that it was free to terminate Stanback based on its determination that he did not satisfactorily meet the PIP requirements. We disagree and affirm.

## I.

In 2004, Clarence Stanback began his employment at DOH as a public health analyst in the Addiction Prevention and Recovery Administration. In September 2016, he was subject to a reduction in force and reassigned to a position in DOH's Office of Health Equity. The responsibilities of Stanback's new position included "review[ing] and analyz[ing] a broad array of programs, projects, health data and information in order to advise policy development and health impact assessments to

raise the health standards of residents of the District." Stanback was expected to have "[k]nowledge of, and proficien[cy] in the use of operating a personal computer (PC), utilizing various software (i.e., Microsoft [W]ord, Excel, Access, PowerPoint, etc.), and a willingness to learn new technology associated with assigned work tasks combined with strong analytical skills and experience working with large databases."

After several months on the new job, Stanback's supervisor determined that he was not meeting expectations. Stanback was presented with an Individual Performance Plan (IPP) in January 2017. The IPP identified five "Specific, Measurable, Attainable, Realistic and Time-Related" (S.M.A.R.T.) goals with an attendant deadline for each goal, the last of which fell on September 30, 2017. Dissatisfied with Stanback's progress under the IPP, Stanback's supervisor next presented him with a more formal Performance Improvement Plan (PIP) on June 21, 2017. The PIP informed Stanback that he was failing "to meet the minimum requirements of the position," and articulated the same five S.M.A.R.T. benchmarks that had been identified in his IPP. The PIP also set specific deadlines for meeting each of those five goals. Stanback's due date for meeting the fifth and final benchmark was September 30, 2017, or 101 days after the PIP's June 21, 2017, start date. Stanback filed a grievance complaining that the benchmarks in his PIP were

too onerous to satisfy within the permitted ninety-day period, though that initial grievance did not mention or complain that his PIP exceeded the ninety-day period by eleven days.

On October 6, 2017—107 days after the PIP began and six days after its stated end date—Stanback's supervisor informed him via written memo that he had not met the PIP requirements and that she was recommending his termination. DOH subsequently provided Stanback with formal notice of his proposed termination, citing as its sole reason Stanback's failure to meet the PIP benchmarks. A DOH hearing officer reviewed the proposed termination and recommended sustaining it, finding that the goals of the PIP were consistent with Stanback's position. Shortly thereafter, DOH gave Stanback final notice of his termination, effective December 22, 2017. Once again, the only reason provided for Stanback's termination was his failure to meet the PIP requirements.

Stanback timely appealed his termination to the Office of Employee Appeals the following month. In a subsequently filed amended petition he argued, for the first time, that DOH's contravention of the time restrictions on PIPs meant that, by operation of the regulations themselves, he had "met the PIP requirements." *See* 6B D.C.M.R. § 1410.6. In Stanback's view, he had passed his PIP when his supervisor

failed to issue a written decision informing him of his proposed termination within 100 days from the inception of his PIP—taking the maximum ninety-day PIP period and the maximum ten-day determination period together. An OEA Administrative Judge agreed with Stanback and reversed his termination. Because no party petitioned the OEA Board for review, the Administrative Judge's decision became OEA's final decision. *See* 6B D.C.M.R. § 632. DOH appealed the final decision to the Superior Court, which affirmed on the same basis: that DOH had contravened the mandatory timetable for issuing PIP determinations. DOH now appeals.

## II.

Although this is an appeal from a Superior Court judgment upholding an OEA decision, we review OEA's order "precisely the same as in administrative appeals that come to us directly." *District of Columbia Fire & Med. Servs. Dep't v. District of Columbia Off. of Emp. Appeals*, 986 A.2d 419, 424 (D.C. 2010) (internal quotation marks omitted). We will affirm if OEA's decision "is supported by substantial evidence in the record and otherwise in accordance with law." *Miller v. District of Columbia Off. of Emp. Appeals*, 237 A.3d 123, 126 (D.C. 2020) (internal quotation marks omitted). There is no dispute about the evidentiary record in this appeal, which instead concerns only a question about how to interpret the District's

personnel regulations. We generally "'defer to the OEA's interpretation of the personnel regulations,' given its 'expertise in administering and enforcing' those regulations." *Id.* at 127 (quoting *Hutchinson v. District of Columbia Off. of Emp. Appeals*, 710 A.2d 227, 234 (D.C. 1998)). However, we will not defer to an interpretation that "is unreasonable in light of the prevailing law, inconsistent with the statute [or regulation], or plainly erroneous." *Off. of the District of Columbia Controller v. Frost*, 638 A.2d 657, 666 (D.C. 1994) (internal quotation marks omitted).

The regulations relevant to this appeal are as follows: (1) a PIP "shall last for a period of thirty (30) to ninety (90) days," with no extensions permitted beyond the ninetieth day, 6B D.C.M.R. §§ 1410.3, 1410.5(a); (2) the employer "shall make a determination" regarding whether the employee has met the PIP's requirements "[w]ithin ten (10) calendar days of the end of the PIP period," 6B D.C.M.R. § 1410.5; and (3) "[f]ailure . . . to issue a written decision within the specified time period will result in the employee's performance having met the PIP requirements." 6B D.C.M.R. § 1410.6.

We agree with OEA that a straightforward reading of these regulations provides that Stanback's PIP did not extend beyond the ninetieth day from its start

date, and thus terminated by September 19, 2017.[2]  That, in turn, means a written determination regarding whether Stanback had met the PIP requirements was due by September 29, 2017.  Because no determination was issued before that date, the regulations provide that Stanback is deemed to have met the PIP requirements.

DOH resists this conclusion by taking a divide-and-conquer approach to the regulations.  In its view, the PIP lasted until September 30 per its very terms, and while that end date exceeds the ninety-day maximum by eleven days, that is harmless error because the ninety-day cap is "directory" rather than "mandatory."  As support for this point, DOH invokes precedents in which we have said that a statute or regulation "imposing a time limit within which a public official must act which does not specify the consequences of noncompliance is meant to be directory" and not a mandatory "limitation of the power of the officer."  *See Teamsters Loc. Union 1714 v. Pub. Emp. Rels. Bd.*, 579 A.2d 706, 710 (D.C. 1990) (citing *JBG Props., Inc. v.*

---

[2] OEA mistakenly determined that September 15, 2017, was the ninetieth day from the PIP's inception, though the parties now agree that September 19, 2017, marks the ninetieth day.  The discrepancy is immaterial to this dispute.  Also, we do not foreclose an argument that a PIP is null and void where it exceeds ninety days, as that argument is not presented here.  Instead, we resolve only the dispute before us, in which the parties agree that this PIP was valid but disagree about its effective end date.

*District of Columbia Off. of Hum. Rts.*, 364 A.2d 1183, 1185 (D.C. 1976)).[3] Once it carves out and pardons its initial misstep, DOH maintains it complied with the ten-day notice requirement because the October 6 written determination came within ten days of the PIP's September 30 end date. In DOH's view, that ten-day deadline is the only "specified time period" referenced by 6B D.C.M.R. § 1410.6, so its posited compliance with the ten-day notice provision means there is no cause to deem Stanback as having met the PIP requirements under that provision.

DOH's argument falters at its first step.[4] It is often true that "provisions regulating the duties of public officers and specifying the time for their performance"

---

[3] DOH also argues that the longer period was really a boon to Stanback, because it gave him additional time to meet the PIP benchmarks. That is a vast oversimplification. Restricting the length of PIPs protects employees both by ensuring that their benchmarks are achievable within a reasonably discrete timeframe and by protecting against the stress and anxiety of operating under a PIP for a more protracted period (during which an employee has little job security). It is not for us to second-guess the determination that a ninety-day cap strikes the appropriate balance between giving the employee enough time to satisfy the goals of their PIP and protecting that employee from the travails of an unnecessarily prolonged process.

[4] Stanback argues that DOH waived its argument that the ninety-day cap was directory rather than mandatory because it did not articulate this point before OEA or the Superior Court. While it is true that DOH did not precisely invoke the directory/mandatory dichotomy that it now raises, it sufficiently preserved this point—that any breaches of the regulatory timelines were harmless—so that this claim was adequately preserved for our review. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a . . . claim is properly presented, a party can make any

provide directory rather than mandatory timelines, at least where the provisions do not assign any consequences to the officer's noncompliance. *JBG Props.*, 364 A.2d at 1185. But that rule-of-thumb is of no help to DOH because the ninety-day cap on PIPs does not meet that description. Section 1410.3 says, as relevant here, that a PIP shall neither be fewer than thirty days nor longer than ninety days. *See also* 6B D.C.M.R. § 1410.5(a). It does not set any timetable for government action or specify any time by which public officers must carry out their duties, but instead outlines the fundamental parameters of a PIP. Substantively, a PIP must identify "specific performance areas" and "[p]rovide concrete, measurable action steps"; duration-wise, it "shall last for a period of thirty (30) to ninety (90) days." 6B D.C.M.R. § 1410.3. The regulation does not say when (or if) an employer may impose a PIP, nor does it require agency action to affirmatively terminate a PIP at any particular time once it begins. The rule DOH invokes thus has no application to the ninety-day cap on PIPs, and the cases it relies upon are all inapposite because they involve timelines that directly govern when a public official must act, unlike here. *See, e.g.*, *Teamsters*, 579 A.2d at 708 (agency must "render[]" a disciplinary decision within 45 days of notice); *Vann v. District of Columbia Bd. of Funeral Dirs.*, 441 A.2d 246,

---

argument in support of that claim; parties are not limited to the precise arguments they made below."); *Jones v. United States*, 990 A.2d 970, 981 n.34 (D.C. 2010) (distinguishing between "new legal arguments on appeal to support a claim made below" and "an entirely new factual claim").

247 (D.C. 1982) (agency must "issue" a decision within ninety days of hearing); *JBG Props.*, 364 A.2d at 1184-85 (agency must "serve" a complaint within fifteen days of filing an investigation and "determine" whether there is probable cause within 120 days).

To be sure, a different provision in the regulations, § 1410.5, specifies a timeline within which a public official must act, and it is tethered to a PIP's end date. That provision requires a written determination of whether the employee has met PIP requirements "[w]ithin ten calendar days of the end of the PIP period." 6B D.C.M.R. § 1410.5. But that is of no help to DOH because § 1410.5 is unquestionably a mandatory deadline. That is because § 1410.6 specifies the consequences for failing "to issue a written decision within the specified time period": the employee is deemed to have met the PIP requirements. The only question here is when the ten-day clock begins to run in the situation where a PIP, by its own terms, purports to extend beyond the ninety-day maximum. Section 1410.3's answer is that the PIP in fact cannot extend beyond the ninetieth day, so that the ten-day clock starts to run no later than ninety days from the PIP's inception (because that is the last viable end date for a PIP). DOH provides no good reason to skirt that straightforward reading of the regulations, much less one that would make

OEA's natural reading of the regulations "unreasonable" in light of the deference we accord to it.[5] *Frost*, 638 A.2d at 666.

That is also the only reading of the regulations that makes sense of them as a whole. *See Daly v. District of Columbia Dep't of Emp't Servs.*, 121 A.3d 1257, 1263 (D.C. 2015) ("[I]t is well-established" that we read statutes and regulations "as a whole."). The ten-day notification period in the regulations makes sense when read in tandem with the ninety-day cap on PIPs. Together, those two provisions ensure that no employee will be subjected to an unduly protracted PIP, or be left to worry about their fate for more than 100 days after its inception. But when the two

---

[5] DOH argues this approach will lead to absurdities in those cases where PIPs are expressly of a shorter duration. Where a PIP is expressly for just thirty days, for instance, DOH argues that under OEA's "reasoning that the regulation provides one combined 100-day period, the supervisor would have 70 days after the PIP's end to issue a decision." That's wrong. OEA's reasoning was that a PIP cannot last longer than ninety days—not that it must always last ninety days—and that an employee must receive notice of the employer's determination within ten days of whenever the PIP ends. Where the PIP by its express terms is for a shorter period, like thirty days, a failure to issue a determination within the ten days after its termination date should trigger § 1410.6's command to treat the employee as having met the PIP requirements. That a shorter PIP can be extended up to the ninetieth day might leave the above scenario more amenable to the type of harmless error analysis that DOH invokes here, *see infra*, but that is a question for another day and is not raised by this case. DOH also argues that § 1410.6's reference to a singular "time period" is at odds with reading it to apply to "aggregate plural 'periods,'" as we have applied it to the 100-day PIP-plus-determination period. Not so. There is nothing at all peculiar about referring to a singular time period that includes multiple points in time within it.

provisions are disaggregated in the manner DOH urges, the ten-day notification requirement becomes a triviality, because any employer could extend that ten-day deadline simply by extending the PIP period in perpetuity. It would make no sense for § 1410.6's default rule—that the employee is deemed to have met the PIP's requirements—to be triggered by a breach of a ten-day deadline where that deadline itself could simply be extended by the employer without consequence, via extension of the PIP period. In short, the ten-day notification period is inextricably moored to the time constraints on PIPs themselves, and the former is toothless without the latter.

DOH's final retort is that the OEA Board has previously taken a different position on this point, and that we should defer to its earlier interpretation. *See Jackson v. District of Columbia Dep't of Gen. Servs.*, OEA Matter No. 1601-0034-11 (March 29, 2016). In *Jackson*, the OEA Board upheld the termination of a District employee following a PIP that lasted ninety-two days by its terms, with a written determination issued to the employee four days later (or ninety-six days from the PIP's inception). *Id.* at *7 & n.21. In that OEA appeal, the employee argued that his termination should be reversed because his PIP lasted more than the ninety days permitted by the regulations. *Id.* at *7. OEA disagreed, finding the two-day overage "de minimis" because "it did not result in substantial harm" where written

notice of the employee's failure to meet the PIP requirements was provided four days after the PIP's end date. *Id.* at *4-5.

Contrary to DOH's argument, *Jackson* is in no tension with the OEA's decision below or with our reasoning today. In *Jackson*, unlike here, the employee received timely notice under § 1410.5 because it came within ten days of the PIP's termination even if (contrary to its terms) the PIP were capped at ninety days. The employee received notice of his termination on day ninety-six from the PIP's inception, within the maximum 100-day PIP-plus-determination period provided by the regulations. The opposite is true here, where written notice of Stanback's proposed termination was not issued until a week after those 100 days had passed, thereby triggering § 1410.6's default rule so that Stanback is deemed to have met the PIP requirements. Thus, DOH's error here—far from causing no "substantial harm or prejudice to the employee's rights," as was the case in *Jackson*—was a decisive factor in Stanback's termination. *See* 6B D.C.M.R. § 631.3.

## III.

We affirm the Superior Court's judgment.

*So ordered.*